IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **ROSA PATRICIA RAMIREZ,** | ) | 1:11-CV- 531 AWI DLB |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **ORDER ON DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY** |
| **MERCED COUNTY,** | ) | **JUDGMENT** |
| | ) | |
| **Defendant.** | ) | (Doc. No. 24) |
| | ) | |

Plaintiff Rosa Ramirez has brought suit against her former employer, Defendant Merced County ("the County"), for violation of the Americans with Disabilities Act ("ADA"), specifically 42 U.S.C. § 12112(b)(5)(A). The County has moved for summary judgment on the claims against it. Ramirez failed to file an opposition or a response of any kind. For the reasons that follow, the County's motion will be granted.

## FACTUAL BACKGROUND

Ramirez worked for the County as a System Analyst II. See Defendant's Undisputed Material Fact ("DUMF") 1. As a System Analyst II, Ramirez was required *inter alia* to type, drive to Sacramento or Rancho Cordova (50% of her job involved traveling to these two cities), and attend meetings and take notes. See  DUMF Nos. 2, 4, 6. However, Ramirez could not type for more than one hour per day, could not drive for more than one hour, and could not sit for more than hour before having to stand. See DUMF Nos. 3, 5, 7. Taking notes caused Ramirez severe pain in both of her forearms, and sitting and typing caused her severe pain. See DUMF

Nos. 7, 8.  Between June 1996 and February 2009, there were 53 actions taken by the County to accommodate Ramirez's limitations, including accommodations to meet her doctor's restrictions. See DUMF Nos. 9, 10, 21.  Ramirez received numerous leaves of absence, interactive process meetings, transitional work assignments, ergonomically modified work stations and evaluations,[1] Dragon Speak software, assistants, and workload modifications.  See DUMF Nos. 11, 12, 15, 16, 17, 18, 19, 21.

On January 5, 2009, Ramirez's treating physician restricted Ramirez as follows: "Permanent restrictions.  No typing over 1 hour/day.  No repetitive grasping, squeezing, overhead use with each arm."  DUMF 22.

On February 4, 2009, Ramirez engaged in a third interactive process with the County in order to determine Ramirez's limitations and how they affected her job.  See DUMF 48.  At the interactive process meeting, Ramirez and the County went over the essential functions of her job as set forth in her job description.  See DUMF 49.  Ramirez agreed with her doctor's limitations. See DUMF 50.  Ramirez informed the County that she could not: operate a personal computer and other modern office equipment; perform repetitive hand and arm motions; perform a variety of administrative, technical, and program analysis functions; analyze data, interpret policies, procedures and regulations; develop appropriate conclusions and prepare reports; or prepare annual and quarterly reports of staffing, expenditures, funding, and caseload data for submission to executives.  See DUMF 53.  The County attempted to identify an appropriate modified or alternate position for Ramirez, and other employment with the County was also discussed.  See DUMF 54.  However, due to the medical limitations imposed by her physician, there were no other positions with the County that could reasonably accommodate Ramirez's permanent restrictions.  See id.  It was clear at the February 4 meeting that Ramirez could not perform the essential functions of her job, and that her continued employment would cause further injuries. See DUMF 93.

On February 4, 2009, Ramirez filled out a disability application counseling worksheet

---

[1]Ramirez had surgeries in 1995, 1998, 2006, and 2008 on both elbows, her right wrist, and her right shoulder.  See DUMF 14.  After each surgery, the County evaluated Ramirez's work station to ensure that it was not going to hurt her hands.  See DUMF 17.

1   with the Merced County Employees Retirement Association ("MCERA"),[2] and then applied for

2   service connected disability retirement on February 5, 2009.  See DUMF Nos. 32, 33.  Service

3   connected disability retirement is when a county employee becomes permanently ill or injured as

4   a result of his or her job duties, and the employment substantially contributes to the permanent

5   incapacity.  See DUMF 27.  To receive service connected disability retirement, the applicant

6   must submit an application and medical proof.  See DUMF 28.  Ramirez understood that she had

7   to prove that she was permanently disabled from substantially performing her job duties.  See

8   DUMF 35.  Ramirez represented to MCERA that she could not type, write, do repetitive hand

9   use, drive for extended periods of time, or carry objects for extended periods of time, and that her

10  job duties require "a lot" of typing, keyboarding, and writing of reports and memos "that I can no

11  longer do."[3]  DUMF 36.  MCERA received medical evidence from Ramirez, sent her records for

12  medical review, and sent Ramirez herself for a medical evaluation.  See DUMF Nos. 39, 41, 43.

13  MCERA's examining doctor concluded that Ramirez's "condition is permanent and she is not

14  capable of doing her usual and customary job duties as a Staff Services Analyst II."  See DUMF

15  42.  The doctor who reviewed Ramirez's records concluded: "The opinions of the physicians and

16  administrators involved in this case agree [Ramirez] is disabled from the performance of the

17  essential duties of her job."  DUMF 44.  MCERA also requested and received from the County

18  confirmation that Ramirez could not perform the essential duties of her job.  DUMF 45.  The

19  County relied on Ramirez's representations and on her doctor's reports that she could not

20  perform the essential functions of her job, and supported Ramirez when she applied for service

21  connected disability retirement.  See DUMF Nos. 46, 95.  After considering Ramirez's

22  representations, the medical records, the County's attempts at reasonable accommodation, and

23  the independent medical evaluation, MCERA granted Ramirez service connected disability

24  retirement.  See DUMF 47.

25      In February or March 2009, Ramirez applied to collect disability insurance from Standard

---

[2]MCERA is an association separate from the County.  MCERA was established in 1950 under the "County Employees Retirement Law of 1937" (Cal. Gov. Code § 31450 et seq.).  See DUMF 23.

[3]Under California law, it is unlawful to make false representations to obtain service connected disability retirement benefits.  See Cal. Gov. Code § 31455.5; see also DUMF 37.

Insurance Company. <u>See</u> DUMF 67. The County paid 100% of the disability insurance premiums. <u>See</u> DUMF 68. Ramirez provided medical records, represented to the insurance company that she "can no longer perform essential job related functions," and certified that the information was true and correct. <u>See</u> DUMF Nos. 69, 70. After a medical evaluation, Ramirez was granted long term disability insurance by Standard Insurance Company.[4] <u>See</u> DUMF 73.

Ramirez also applied for social security disability retirement. DUMF 74. Ramirez represented under penalty of perjury that she cannot write, type, grasp, hold, sit, stand, or drive for extended periods of time (10+ minutes) without being in extreme pain. <u>See</u> DUMF 76. Ramirez represented under penalty of perjury that extreme pain limits her ability to perform regular duties at any work or home and that her condition was permanent and stationary. <u>See</u> DUMF 77. At a social security hearing, Ramirez gave similar testimony under oath (generally that she cannot perform repetitive activity because she suffers pain). <u>See</u> DUMF Nos. 79, 80, 81. Ramirez testified that she has been unable to work since May 2009. <u>See</u> DUMF 81.

Ramirez was covered by the California State Personnel Board Merit System rules and regulations. <u>See</u> DUMF 56. One applicable regulation, 2 C.C.R. § 17527, provides that when the "appointing authority concludes that the employee cannot perform the work of the present position, or any other available position in the agency, the appointing authority may terminate the employee . . . ." DUMF 57. On February 10, 2009, Ramirez was given a notice of intent to medically terminate. DUMF 58. On February 27, 2009, after a *Skelly* hearing, Ramirez was given a final notice of action: medical termination on March 12, 2009.[5] <u>See</u> DUMF 59. Although the notice of medical termination provided that Ramirez had the right to reinstatement if she was no longer incapacitated, Ramirez has never applied for any job or for reinstatement. <u>See</u> DUMF Nos. 60, 61, 63. However, because Ramirez voluntarily applied for and received service connected retirement disability, the medical termination was later changed to voluntary retirement. <u>See</u> DUMF 66.

---

[4]The insurance police defined "disability" as meaning the inability "to perform with reasonable continuity the Material Duties of your Own Occupation . . . ." DUMF 71.

[5]Ramirez was informed of her right to appeal to the State Personnel Board. <u>See</u> DUMF 62. Ramirez appealed to the State Personnel Board, but subsequently withdrew her appeal. <u>See</u> DUMF Nos. 64, 65.

## SUMMARY JUDGMENT FRAMEWORK

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  See Soremekun, 509 F.3d at 984; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan Fire, 210 F.3d at 1102-03. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.  The court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029-31 (9th Cir. 2001).

**DEFENDANTS' MOTION**

*Defendant's Argument*

The County argues that summary judgment is appropriate. First, Ramirez is not a "qualified individual" because she could not perform the essential functions of her job even with reasonable accommodation. Second, Ramirez was not subject to an adverse employment action because she voluntarily applied for and received service connected disability retirement. Third, given Ramirez's multiple admissions regarding her disability and inability to perform essential job functions, Ramirez should be estopped from claiming that she could perform the essential functions of her job.

*Plaintiff's Opposition*

Ramirez has filed no opposition or response of any kind.

*Legal Standard*

The ADA prohibits covered entities from discriminating "against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). Prohibited discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ." 42 U.S.C. § 12112(b)(5)(A). In other words, the ADA "says that an employer who fails to make 'reasonable accommodations to the known physical or mental limitations of an [employee] with a disability' discriminates 'unless' the employer 'can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business.'" US Airways, Inc. v. Barnett, 535 U.S. 391, 395 (2002). Under the ADA, the term "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); Barnett, 535 U.S. at 396. "'Essential functions' are 'fundamental job duties of the employment position . . . not including the marginal functions of the position.'" Rohr v. Salt River Project Agric. Improvement and Power Dist., 555 F.3d 850, 864 (9th Cir. 2009). "If a disabled person cannot perform a job's

6

1    'essential functions' (even with a reasonable accommodation), then the ADA's employment

2    protections do not apply."  Bates v. UPS, 511 F.3d 974, 989 (9th Cir. 2008); Cripe v. City of San

3    Jose, 261 F.3d 877, 884-85 (9th Cir. 2001).

4           *Discussion*

5           Summary judgment is appropriate in this case.

6           First, the evidence submitted establishes that Ramirez was not a "qualified individual"

7    under § 12112.  In terms of essential job functions, Ramirez could not use a keyboard, take notes,

8    drive for more than an hour, sit for more than an hour, operate office equipment, analyze and

9    interpret data, or prepare reports.  See DUMF's 3, 5, 7, 8, 22, 53.  Ramirez does not dispute that

10   these were essential functions of her job.[6]  In terms of reasonable accommodations, the County

11   had tried numerous accommodations, including Dragon Speak software, ergonomic assessments,

12   leaves of absence, modified work assignments, and provision of assistants, but these

13   accommodations were not effective.  See id.; DUMF's 9, 10, 11, 12, 16, 18, 19, 21.  Ramirez

14   appears to take the position that she required a quieter work space in which to use Dragon Speak.

15   However, Ramirez never attempted to use Dragon Speak in a quiet room and admitted that she

16   did not know if that would work.  See Ramirez Depo. 114:2-5.  On the other hand, the County's

17   computer consultant, who has extensive experience with Dragon Speak, examined Ramirez's

18   workplace and the software, and determined that Ramirez did not need a private room/office

19   because the background noise at Ramirez's workspace did not interfere with use of Dragon

20   Speak.  See DUMF 87.  Additionally, there were no private offices available to Ramirez.  The

21   offices where noise would be less were all assigned to managers, and the managers needed those

22   offices to privately supervise employees.  See DUMF's 83, 84, 85, 86.  Ramirez has not

23   adequately identified any reasonable accommodations that were available.[7]  Finally, the County's

24   expert vocational rehabilitations specialist, Steven Koobatian, testified that, considering

25   Ramirez's medical conditions and restrictions and the essential job functions, it was not feasible

26

27          [6] Physicians also concluded that Ramirez was unable to perform her essential job functions.  DUMF 42, 44.

28          [7] Even if a more quiet workspace/office was available, that accommodation does not address Ramirez's apparent inability to effectively attend out of town meetings, take notes at the meetings, sit, operate other office equipment, or analyze data.

7

1  for Ramirez to safely perform the functions of a System Analyst II, even with job

2  accommodations.  See DUMF 89.  Ramirez has submitted nothing to indicate that she could

3  perform the essential functions of her job safely.  Thus, the evidence establishes that Ramirez is

4  not a "qualified individual," and she is not entitled to § 12112(b)(5)(A) protection.  See Bates,

5  511 F.3d at 989.

6        Second, it is not clear that Ramirez was actually subjected to an adverse employment

7  action.  It is true that Ramirez initially received a medical termination on March 12, 2009.  See

8  DUMF 59.  However, on January 29, 2009, (prior to the February 4 interactive process meeting)

9  Ramirez requested pay calculations regarding service connected disability retirement.  See

10  DUMF 26.  Shortly thereafter, on February 5, 2009, (one day after the February 4 meeting)

11  Ramirez applied for service connected disability retirement.  See DUMF 33.  The County

12  actively supported Ramirez in her attempts to receive disability from MCERA.  See DUMF 46.

13  Further, Ramirez made representations to MCERA that she could no longer perform her job.

14  See DUMF's 34, 36, 39.  Finally, after MCERA granted Ramirez service connected disability

15  retirement, the County changed Ramirez's medical termination to voluntary retirement.  See

16  DUMF 66.  Given the time line, and the parties' respective conduct with and representations to

17  MCERA, it appears that Ramirez was actively attempting to obtain disability retirement from

18  MCERA prior to termination.  It also appears that Ramirez was not terminated, but instead

19  retired.  Without further argument, explanation, or opposition from Ramirez, the Court can only

20  conclude that Ramirez voluntarily retired and did not suffer an adverse employment action.

21        Finally, the Supreme Court has explained that, when "faced with a plaintiff's previous

22  sworn statement asserting 'total disability' or the like, the court should require an explanation of

23  any apparent inconsistency with the necessary elements of an ADA claim."  Cleveland v. Policy

24  Mgmt. Sys. Corp., 526 U.S. 795, 807 (1999); Lloyd v. Hardin County, 207 F.3d 1080, 1083 n.3

25  (8th Cir. 2001).  The plaintiff's explanation "must be sufficient to warrant a reasonable juror's

26  concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement,

27  the plaintiff could nonetheless 'perform the essential functions' of her job, with or without

28  'reasonable accommodation.'"  Cleveland, 526 U.S. at 807; Lloyd, 207 F.3d at 1083 n.3.  Here,

Ramirez's  representations to the Social Security Administration, MCERA, and Standard Insurance Company (all described above) appear to be contrary to Ramirez's contention in this case that she could perform the essential functions of a System Analyst II with accommodation. See DUMF's 34, 35, 36, 42, 44, 69, 71, 75,76, 77, 79, 80, 81.  Ramirez has offered no explanation for her apparently inconsistent statements.  Without an explanation, Ramirez's prior statements warrant summary judgment.  See Cleveland, 536 U.S. at 807; see also Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 272-73 (3d Cir. 2012) (statements made to disability insurance carrier); Lloyd, 207 F.3d at 1083-84 (statements made to social security administration); Allen v. Pacific Bell, 212 F.Supp.2d 1180, 1195 (C.D. Cal. 2002) (same).

In sum, the uncontradicted evidence indicates that Ramirez is not a "qualified individual" under the ADA, Ramirez voluntarily retired, and Ramirez has made statements regarding her ability to work to the Social Security Administration, MCERA, and Standard Insurance that are inconsistent with her ADA claims in this case.  The County has met its summary judgment burden.  Without an opposition or response from Ramirez, summary judgment will be granted. Nissan Fire, 210 F.3d at 1103.

### ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.    Defendant's motion for summary judgment is GRANTED; and

2.    The Clerk shall enter judgment in favor of Defendant and CLOSE this case.

IT IS SO ORDERED.

Dated:    December 11, 2012    

_____
UNITED STATES DISTRICT JUDGE