IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA PATRICIA RAMIREZ,<br><br>           Plaintiff,<br><br>    v.<br><br>MERCED COUNTY,<br><br>           Defendant. | 1:11-CV- 531 AWI DLB<br><br>ORDER ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND EXPERT WITNESS COSTS<br><br>(Doc. No. 36) |

This was a 42 U.S.C. § 12112(b)(5)(A), American with Disabilities Act ("ADA"), case brought by Plaintiff Rosa Ramirez ("Ramirez") against her former employer, the County of Merced ("the County"). In December 2012, the Court granted the County's motion for summary judgment. The County now moves for an award of attorney's fees under either 42 U.S.C. § 12205, 28 U.S.C. § 1927, or the Court's inherent powers. For the reasons that follow, the Court will grant the County's motion in part.

**BACKGROUND**

In the County's motion for summary judgment, the County argued that they were entitled to judgment for three reasons: (1) Ramirez was not a "qualified individual" under the ADA; (2) Ramirez did not experience an adverse employment action; and (3) Ramirez made previous sworn statements that asserted total disability and did not explain the contradiction between those statements and this lawsuit. See Ramirez v. County of Merced, 2012 U.S. Dist. LEXIS 175476, *10-*11 (E.D. Cal. Dec. 11, 2012). Ramirez filed no opposition or notice of non-opposition to the County's motion, and disputed none of the proposed 96 undisputed material facts that were submitted by the County as part of its motion. This Court relied on the County's undisputed facts, and the evidence that supported those facts, and granted summary judgment motion on

each of the three bases argued by the County. See id. at *17.

With respect to the first basis for judgment, Ramirez was a Systems Analyst II. See id. at *1. The undisputed facts established that Ramirez could not perform the following essential job functions of her job: use a keyboard, take notes, drive for more than an hour, sit for more than an hour, operate office equipment, analyze and interpret data, or prepare reports. See id. at *12. The evidence further established that the County had tried numerous accommodations that were ineffective. See id. at *13. The County had tried Dragon Speak software, ergonomic assessments, leaves of absence, modified work assignments, and provision of assistants. See id. Independent physicians opined that Ramirez could no longer perform the essential functions of her job. See id. at *12 n.6. The County's vocational expert opined that, given the permanent restrictions imposed by Ramirez's physician and the essential functions of the job, it was infeasible for Ramirez to safely perform the functions of her job, even with accommodations. See id. at *13-*14.

With respect to the second basis for judgment, the evidence established that Ramirez voluntarily retired. See id. at *14-*15. Several days prior to the last interactive process meeting, Ramirez requested pay calculations regarding service connected disability retirement. See id. The day after the interactive process meeting, Ramirez applied for service connected disability retirement with the Merced County Employees Retirement Association ("MCERA"),[1] and the County actively supported her efforts. See id. Although the County originally medically terminated Ramirez, the County changed the medical termination to voluntary retirement once MCERA approved Ramirez for service connected disability retirement. See id.

With respect to the third basis for judgment, Ramirez made representations to the Social Security Administration ("SSDI"), MCERA, and Standard Insurance Co. that, in effect, she was permanently disabled and could no longer perform the essential functions of her job. See id. at *4-*7. These representations, along with medical records and physicians' opinions, led to Ramirez receiving disability benefits from MCERA and Standard Insurance. See id. However,

---

[1] MCERA was established [*6] in 1950 under the "County Employees Retirement Law of 1937" (Cal. Gov. Code § 31450 et seq.). It is a separate entity from the County.

Ramirez did not explain how her sworn representations to those entities were consistent with this case.  See id.

### DEFENDANT'S MOTION

*Defendant's Argument*

The County argues that attorneys' fees are appropriate under 42 U.S.C. § 12205 because this case was frivolous, unreasonable, or without foundation.  At the time the lawsuit was filed, Ramirez knew that she had admitted during the interactive process that she could not perform the essential functions of her job and knew that she had stated on several occasions under oath that she was permanently disabled.  Further, Ramirez's counsel had represented her prior to this case, and knew about Ramirez's statements at the interactive process to the County and to MCERA and Standard Insurance.  Even after hearing Ramirez's deposition testimony that she received disability retirement instead of medical termination, her counsel continued this litigation.  Also, Ramirez engaged in delays throughout the process, did not adequately communicate, and did not file an opposition to summary judgment.  Ramirez and her counsel were presented with the substantial evidence that showed frivolousness well before the summary judgment motion, but continued to unreasonably prosecute this matter.

The County also argues that sanctions under 28 U.S.C. § 1927 are appropriate.  This case is analogous to *Edwards v. General Motor Corp.*, 153 F.3d 242 (5th Cir. 1998), in which fees under § 1927 were awarded against an attorney who knew that his client had no rightful claim to money, but instead continued to pursue the case to harass the defendant.  Here, in June 2011, Ramirez's counsel was informed that Ramirez had engaged in the interactive process, had received many prior accommodations, could not perform the essential functions of her job, that Dragon Speak was provided but was inadequate, and that this case was frivolous.  Instead of dropping the case, the case was pursued through summary judgment.

Finally, the conduct discussed above is sufficient to demonstrate "bad faith" for purposes of sanctions under the Court's inherent authority.

The County requests $37,133.20 in expert fees and $92,950.00 in attorneys fees.  The

County argues that lead attorney Roger Matzkind spent 134.5 hours on the case, and attorney James Stone spent 183.5 hours on the case. The County argues that a reasonable hourly rate for Matzkind is $350, and a reasonable hourly rate for Stone is $250.

*Plaintiff's Opposition*

Ramirez argues that fees and sanctions are inappropriate because this case was not frivolous. The County fails to address the paramount question in this case of why it refused to provide Ramirez with a quiet workstation so that she could use voice technology rather than having to type manually. Ramirez asserts that she sincerely believed that she could have continued to perform her job with the accommodation of a quiet workstation and voice typing technology. This was a key question that a jury would have had to answer if this case had gone to trial. There is also a factual question as to whether Ramirez was forced into applying for disability benefits out of financial necessity. Had this case gone to trial, Ramirez would have testified that, because doctors were saying that she was disabled and unable to perform her job, she applied for disability benefits to survive. Nevertheless, she believed that she still could have performed her job with reasonable accommodation. A jury could have found for Ramirez. The decision to forego further litigation was made on the ground that Ramirez had significantly mitigated her damages by taking advantage of disability benefits and nearly completing a graduate degree.

Ramirez argues that many of the acts that occurred during litigation, and about which the County complains, are disputed and irrelevant to the merits of Ramirez's claim. Ramirez did not take depositions or designate experts because of financial limitations and a lack of need for such evidence. Ramirez intended to rely on evidence and facts already within her and the County's possession. Further, the County was advised in writing that no opposition to the summary judgment motion would be filed, and an offer to dismiss the case was made and rejected. Again, the decision to not oppose summary judgment was based on a perceived difficulty regarding damages, specifically Ramirez had managed to mitigate much of her losses.

*Legal Standard*

In pertinent part, the ADA provides that "the court in its discretion, may allow the

prevailing party … a reasonable attorney's fee, including litigation expenses and costs . . . ." 42 U.S.C. § 12205; Brown v. Lucky Stores, 246 F.3d 1182, 1190 (9th Cir. 2001).  A court may award a prevailing defendant fees if the plaintiff's action was frivolous, unreasonable or groundless/without foundation at the time the complaint was filed, or if the plaintiff continued to litigate after it clearly became so.  See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978); Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1154 (9th Cir. 1997).  Subjective bad faith is not necessary.  See Christiansburg, 434 U.S. at 421.  However, under the *Christiansburg* standard, "an unsuccessful plaintiff who acted in good faith is generally not at risk of having to pay the other side's attorney's fees."  Akiak Native Cmty. v. United States EPA, 625 F.3d 1162, 1166 (9th Cir. 2010).  An action is "frivolous" if it lacks an arguable basis in law or in fact.  Jones v. Wild Oats Mkts., Inc., 467 F.Supp.2d 1004, 1007 (S.D. Cal. 2006); Peters v. Winco Foods, Inc., 320 F.Supp.2d 1035, 1037 (E.D. Cal. 2004).  A case is also frivolous when the result appears obvious or the arguments are wholly without merit.  Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007).  However, the Supreme Court has directed courts to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."  Christiansburg, 434 U.S. at 421-22; EEOC v. Bruno's Restaurant, 13 F.3d 285, 287 (9th Cir. 1992).  Such hindsight reasoning can have a chilling effect upon potential plaintiffs and discourage all but those plaintiffs who have airtight cases from bringing lawsuits.  See Christiansburg, 434 U.S. at 422; Bruno's, 13 F.3d at 287.  Further, courts are also to be mindful of the potential that the expense of defending a frivolous claim may act as a disincentive for defendants to exercise their legal rights.  See Christiansburg, 434 U.S. at 423 n.20; Bruno's, 13 F.3d at 287-88.

*Discussion*

A.   42 U.S.C. § 12205

    1.   Frivolous, Unreasonable, or Foundationless Suit

The County heavily relies on Ramirez's representations to Standard Insurance, SSDI, and MCERA.  The representations are to the effect that Ramirez was permanently disabled and that

she could not perform the substantial functions of her job.  When "faced with a plaintiff's previous sworn statement asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 807 (1999).  The plaintiff's explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'"  Id.  Ramirez's representations were sufficient to require an explanation as to the apparent inconsistency.  Although Ramirez offered no explanations during the summary judgment process, her opposition to this motion reflects two explanations.

First, Ramirez indicates that financial hardship or economic necessity required her to apply for these disability benefits.  However, Ramirez cites no authority to support her argument that economic necessity can adequately explain an apparent disability inconsistency.  The Court has found one case that has rejected economic hardship as an adequate explanation.  In *Millage v. City of Sioux City*, 258 F. Supp. 2d 976 (N.D. Iowa 2003), the district court held: ". . . that explanation does not, in any way, explain, or even address, the apparent inconsistency 'with the necessary elements of an ADA claim.'  Instead, it relies on circumstances completely extrinsic to the requirements of the ADA claim, because it has nothing to do, for example, with the elements of such a claim or the way that 'disability' is defined under the ADA and under the long-term disability benefits plan."  Id. at 994.  The Court agrees with *Millage*.  If anything, "economic hardship" provides an explanation for making false statements, it does not provide a basis for a good faith belief in the ability to work despite a claim of total or permanent disability.   Economic hardship is not a legitimate reason under *Cleveland*.

Second, the opposition indicates that Ramirez held a good faith belief that a reasonable accommodation would have permitted her to perform her job.  As discussed above, in *Cleveland*, the Supreme Court required plaintiffs to explain apparent contradictions between prior representations regarding disability and the elements of the plaintiffs' ADA claims.  See Cleveland, 526 U.S. at 807.  However, the Supreme Court also explained that, "when the [Social

Security Administration] determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant to refer to the possibility of reasonable accommodation when she applies for SSDI. . . . The result is that an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." Id. at 803 (emphasis in original). Here, none of Ramirez's representations dealt with her ability to perform her job with accommodation. The representations are all to the effect that she is either permanently disabled or that she cannot perform the substantial functions of her job. Further, there has been no evidence presented that MCERA, SSDI, or Standard Insurance inquired into Ramirez's ability to perform her job with accommodation. When an entity or agency makes no inquiry as to the ability to perform a job with accommodation, there is not necessarily an inconsistency with the ADA when the individual does not mention the ability to perform her job with accommodation. See id.

      Ramirez's disability dealt with her arms and hands. Ramirez's doctor imposed the permanent restrictions of no typing over 1 hour per day and no repetitive grasping or squeezing or overhead use with each arm. There is no question that use of a computer on a daily basis was an essential function of a System Analyst II. The reasonable accommodation advocated by Ramirez was use of Dragon Speak software (a hands-free voice recognition computer program) and a quiet work space so that Dragon Speak would properly function. This accommodation appears to address Ramirez's permanent restrictions because the accommodation would seem to significantly limit the physical typing that would be necessary for creating e-mails, memos, reports, and reviews. The Court finds that Ramirez's explanation is sufficient under *Cleveland*. Further, given the accommodation requested and the permanent physical restrictions imposed, the Court cannot say that Ramirez's prior representations made this case frivolous when it was filed.

      Similarly, the Court does not find that the issues of whether Ramirez was a qualified individual or whether Ramirez suffered an adverse employment action made this case frivolous when filed. Ramirez maintained that she could substantially perform the essential functions of her job with the accommodation of Dragon Speak and a quiet work space. Again, as explained above,

that accommodation directly addressed the permanent physical limitations imposed on Ramirez. Further, in terms of voluntary retirement, the last February 2009 interactive process did not result in an agreed upon accommodation, and Ramirez was subsequently medically terminated. If the Dragon Speak and quiet workspace accommodation was determined to be reasonable, but not given, then the argument could be made that Ramirez had to apply for retirement in the absence of any other option. That is, by denying a reasonable accommodation, the County essentially forced Ramirez into applying for disability.

Nevertheless, that a case is not frivolous, unreasonable, or without foundation when filed does not end the inquiry. Attorneys' fees may be awarded when a party continues to pursue a case even though it has become clear that the case is no longer reasonable or with foundation. See Christiansburg, 434 U.S. at 422. It is this aspect of *Christiansburg* that raises significant concern. There were key facts that emerged either prior to or at the time of summary judgment that undercut the foundation and reasonableness of pursuing this case.

First, evidence of the essential functions of Ramirez's job was presented during summary judgment. The essential functions of Ramirez's job included driving to and from Sacramento or Rancho Cardova, taking notes, and operating office equipment. Dragon Speak would not aid Ramirez in performing these essential functions. Further, there has been no showing or argument by Ramirez that these are not essential functions or that other accommodations were available. If Ramirez could not perform these essential functions, either with or without accommodation, then Ramirez was not a "qualified individual" under the ADA and could not recover. See Bates v. UPS, 511 F.3d 974, 989 (9th Cir. 2008).

Second, Ramirez contends that the failure to file an opposition to summary judgment was essentially due to a determination that she had been able to largely mitigate her lost income through disability benefits and the near completion of a post-graduate degree. However, Ramirez obtained MCERA benefits in August 2009 and obtained disability benefits from Standard Insurance in October 2009. See Doc. No. 25-12; Doc. No. 41-1 at ¶ 7. There is no evidence that Ramirez obtained any other benefits, and this lawsuit was not filed until March 2011. Further, the issue of mitigated damages appears to have been raised by Magistrate Judge Beck during the

initial scheduling conference of in August 2011.  See Doc. No. 41-1 at ¶ 7.  Although there is no evidence that Ramirez's losses have been fully mitigated, it is unknown why mitigation would not have been a sufficient reason to drop this case once the issue was raised in August 2011.

Third, the County submitted evidence that the only way Ramirez could have gotten a private office was if one of the program managers or supervisors were evicted from their office. See Hassett Dec. at ¶ 10.  Ramirez has cited no authority that would require the eviction of a supervisor from his office, nor has Ramirez argued that there were other places where she could have worked in a quieter environment.

Fourth, the County submitted the declaration and expert report of Mark Lynch, a computer consultant who was experienced in voice technology.  See  Lynch Dec. ¶ 5.  Lynch's evidence expressed three critical opinions.  First, Ramirez worked in a partitioned cubicle that created a private and insulated space.  See id. at ¶ 6.  The ambient noise of Ramirez's work station would not have interfered with the use of Dragon Speak.  See id.  Therefore, Ramirez did not require a private office to use Dragon Speak.  See id.  Second, a System Analyst II was required to utilize nine computer programs.  See id. at ¶ 7.  Dragon Speak was compatible with only three of the nine programs.  See id.[2]  Third, Dragon Speak would not have allowed Ramirez to perform the essential functions of her job while meeting the requirements of her permanent work restrictions. See id.  Each of these opinions was clearly stated in Lynch's July 2012 expert report.  See Lynch Dec. Ex. 2.

Fifth, the County submitted the declaration and report of Steven Koobatian, a vocational rehabilitation specialist.  See Koobatian Dec. ¶ 3.  Koobatian performed a site inspection of Ramirez's work environment, reviewed medical documents and statements by Ramirez, and interviewed other County employees.  See id. at ¶¶ 4-5.  Koobatian also relied in part on the opinions of Lynch.  See id. at Ex. 2.  Koobatian concluded that, even with accommodations, it was not safe for Ramirez to work as a System Analyst II.  See id. at ¶¶ 5-7.  Koobatian's opinions were clearly stated in his July 2012 expert report.  See id. at Ex. 2.

---

[2] Dragon Speak was compatible with Microsoft Outlook, Microsoft Word, and Microsoft Excel.  See Lynch Dec. ¶ 7.  Dragon Speak was incompatible with Able2Extract, Smart Draw, Oracle Discover, C-IV, Kronos, and Crystal Reports.  See id.  Kronos and Crystal Reports appear to have been added after Ramirez's employment ended.

9

These facts are troubling. Even if the Court accepts that a genuine issue of disputed fact could have been created about whether a private office or a quieter work space was needed for Dragon Speak, there were myriad other problems. The recoverable damages appear to have been very low prior to the filing of this suit. No quieter space appears to have been available. Dragon Speak does not address other essential functions of Ramirez's position. Dragon Speak is not compatible with four to six programs that a System Analyst II is required to use. Ramirez could not safely perform her job within the permanent medical restrictions, even with Dragon Speak. Nothing has been shown, either during the summary judgment proceeding or in the briefing on this motion, to contradict or challenge these facts. The combined effect of these facts is that Ramirez's case collapses and loses its foundation. Without more from Ramirez, the Court can only conclude that this case became frivolous, unreasonable, and/or without foundation during the course of litigation.

The question then becomes at what point Ramirez should have realized that her case had become frivolous, unreasonable, or without foundation. Early in the litigation process, the County explained in a June 29, 2011 letter that it believed the case was frivolous due to Ramirez's prior representations, the February 2009 interactive meeting, and the ineffectiveness of Dragon Speak. See Doc. 38 at Ex. B. The County also indicated that it would seek attorneys' fees if the case were pursued. See id. In a March 16, 2012 letter, the County asked Ramirez to reevaluate her case in light of Ramirez's statements to doctors and other agencies/entities. See id. at Ex. H. On September 28, 2012, the County disclosed its three expert witnesses (Lynch, Koobatian, and Volk, an economist). See Doc. No. 37 at 8.[3] On October 12, 2012, the County informed Ramirez that it would be filing a summary judgment motion and provided a copy of the proposed undisputed material facts for her review. See Doc. No.38 at Ex. M. Ramirez never responded to the October 12 letter or to the proposed undisputed material facts. See Doc. No. 24 at Ex. A. On November

---

[3] The County's motion states that it disclosed its experts on September 28, 2012, and cites the declaration of Roger Matzkind in support. The Matzkind declaration does not mention when the County disclosed its experts. However, Ramirez does not challenge the assertion that the County disclosed its experts on September 28. Ramirez's opposition does state that instead of designating her own experts, she decided to rely on records, her own testimony, and opinions offered by defense experts. In the absence of contradiction from Ramirez, the Court accepts that the County experts were disclosed on September 28, 2012.

9, 2012, the County filed its summary judgment motion. See Doc. No. 24. The undisputed material facts that were filed as part of the summary judgment motion were identical to those provided to Ramirez on October 12, 2012. Cf. Doc. 38 at Ex. M with Doc. No. 27. On November 29, 2012, Ramirez sent a fax to the County that stated she would voluntarily dismiss her complaint. See Doc. No. 38 at Ex. N. However, Ramirez filed nothing with the Court regarding the County's summary judgment motion. Finally, on December 11, 2012, the Court granted the summary judgment motion on all bases argued. See Doc. No. 33.

The above chronology indicates that the County has always maintained that this lawsuit was unfounded. However, it appears to the Court that the moment that it should have been clear to Ramirez that her case had lost its foundation was the point in which the expert reports were disclosed on September 28, 2012. The reports of Lynch and Koobatian are devastating. The reports negate the only accommodation Ramirez has ever identified. Dragon Speak was incompatible with essential computer programs, and Ramirez's use of that program would still have resulted in a violation of her permanent medical restrictions. The effect of the reports were magnified on October 15, 2012, when the County sent its proposed undisputed material facts in preparation for summary judgment. The undisputed facts and the expert reports established that Ramirez was not a "qualified individual" under the ADA. Ramirez knew that the County had been urging frivolity, reassessment, and dismissal from early in the proceedings. It was likely that the County would move for summary judgment once it had obtained the expert reports. Instead of contacting the County, Ramirez was completely silent from September 28, 2012, to November 29, 2012.

Under these circumstances, the Court finds that the *Christiansburg* standard has been met. However, because this case was not clearly frivolous at the time of filing, the Court will award attorneys fees from the point in time in which it was clear that the case had become frivolous, without foundation, and/or unreasonable. See Edgerly v. City & County of San Francisco, 599 F.3d 946, 962 (9th Cir. 2010) (affirming award of attorneys fees under *Christiansburg* standard from the date discovery ended); Smith v. Barrow Neurological Inst., 2013 U.S. Dist. LEXIS 83353, *2-*6 (D. Ariz. June 13, 2013) (awarding attorney's fees from date plaintiff filed motions

11

for reconsideration); see also Thomas v. City of Tacoma, 410 F.3d 644, 651 (9th Cir. 2005) (". . . notwithstanding such a finding [of frivolousness], the district court still retains discretion to deny or reduce fee requests after considering all the nuances of a particular case."). That point was the day after disclosure of the expert reports – September 29, 2012.

### 2. Amount of Attorneys' Fees

An award of attorney's fees under 42 U.S.C. § 12205 is calculated through use of the lodestar method. See Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010); Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The court first determines the appropriate hourly rate for the work performed, and then multiplies that amount by the number of hours properly expended in doing the work. Antoninetti, 643 F.3d at 1176; Fischer, 214 F.3d at 1119. The court then must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors, excluding those factors that have been subsumed in the initial lodestar calculation. Fischer, 214 F.3d at 1119. There is a "strong presumption" that the lodestar amount is reasonable and sufficient, and only "in extraordinary circumstances" should the lodestar amount be altered. See Antoninetti, 643 F.3d at 1176; Fischer, 214 F.3d at 1119 n.4. The party moving for attorneys' fees bares the burden of submitting evidence of the hours worked and the hourly rate requested. McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009); Carson v. Billings Police Dep't, 470 F.3d 889, 891 (9th Cir. 2006).

#### a   Hourly Rate

The appropriate hourly rate is calculated according to the prevailing market rates in the relevant community . . . ." Blum v. Stenson, 465 U.S. 886, 895 (1984); Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). The court is to be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. Schwartz v. Secretary of HHS, 73 F.3d 895, 908 (9th Cir. 1995). The "relevant legal community" is generally "the forum in which the district court sits." Barjon, 132 F.3d at 500; Schwartz, 73 F.3d at 906. The market rate in the "relevant legal community" is used even when the prevailing defense counsel is a salaried government attorney. See NLRB v. Local 3 IBEW, 471 F.3d 399, 406 (2d Cir. 2006); Bond v. Blum, 317 F.3d 385, 400 (4th Cir. 2003); Wisconsin v. Hotline, Inc.,

236 F.3d 363, 365-66 (7th Cir. 2000); Napier v. Thirty Or More Unidentified Federal Agents, 855 F.2d 1080, 1093 (3d Cir. 1988).

Here, the County has submitted evidence that in Fresno County a rate of $350 per hour is a reasonable rate for an attorney of Roger Matzkind's experience and skill. See Doc. No. 38 at Ex. A ¶¶ 18-20. Of particular note, Matzkind's declaration indicates that a fee in the range of $300 to $375 would be reasonable. See id. at ¶ 19. The County has also submitted evidence that in Fresno County a rate of $250 per hour is a reasonable rate for an attorney of James Stone's experience and skill. See id. at ¶ 20. Finally, Judge Shubb of the Sacramento Division of the Eastern District of California found that the hourly rates of $325 and $250 for Matzkind and Stone, respectively, were reasonable.[4] See Crane-McNab v. County of Merced, 773 F.Supp.2d 861, 883 (E.D. Cal. 2011). Ramirez does not object or challenge the requested hourly rates.

In light of *Crane-McNab*, Matzkind's declaration that a rate of $300 to $375 is a reasonable rate, and the Court's own experience, the Court will follow the hourly rates set in *Crane-McNab*. Accordingly, the hourly rate for Matzkind will be set at $325 per hour, and the hourly rate for Stone will be set at $250.

### b. Hours Properly Expended

Courts may reduce claimed hours if the hours are excessive, redundant, or otherwise unnecessary. Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1047 (9th Cir. 2000). That is, courts should exclude from the fee calculation hours that were not "reasonably expended." Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1200 (9th Cir. 2002). If a court reduces the number of hours claimed, it must provide a "concise but clear explanation of its reasons" for doing so. Van Gerwen, 214 F.3d at 1047. The fee applicant must submit evidence in support of the hours worked during litigation. Fischer, 214 F.3d at 1121; Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1992). This burden can be met, albeit barely met, by simply listing the hours and identifying the general subject matter of his time expenditures. Fischer, 214 F.3d at 1121. The

---

[4] Matzkind's declaration erroneously states that Judge Shubb set a rate of $350 per hour for Matzkind. Judge Shubb actually held, "Given Mr. Matzkind's experience as an attorney practicing for more than thirty years, the court will take the average of these rates and use a rate of $325 for Mr. Matzkind." Crane-McNab, 773 F.Supp.2d at 883.

13

party opposing attorneys' fees bares the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours claimed by the fee applicant.  Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1992).  If a court concludes that insufficient information is provided by the fee applicant, the court may either request additional information or reduce the amount of the award accordingly.  See Fischer, 214 F.3d at 1121.

After September 28, 2012, Matzkind billed 24 hours in connection with this case.  See Doc. No. 38 at Ex. A.  Of those 24 hours, 13 were spent with respect to the summary judgment motion, 5.5 hours were spent with respect to this fee motion (including preparing, reviewing, and editing declarations and the motion itself), .25 was spent reviewing a discovery order, 3 hours were spent on legal research regarding attorneys fees (.25 hours) and dismissal (2.75 hours),[5] 1.25 hours were spent preparing a letter to Ramirez's counsel, and 1hour was spent reviewing the summary judgment order, the actual judgment, and legal research regarding "closed" cases.  See id.

After September 28, 2012, Stone billed 52 hours in connection with this case.  See Doc. No. 38 at Ex. P.  Of those 52 hours, 38 hours were spent withe respect to the summary judgment motion, .5 was spent reviewing the order granting summary judgment, 12.5 hours were spent preparing this fee motion, and 1 hour was spent preparing a declaration for this fee application.  See id.

The vast majority of time spent on this case by the County's counsel involved summary judgment.  The summary judgment motion was physically substantial.  It consisted of 38 pages of briefing, 17 exhibits which totaled 260 pages, 5 of the 17 exhibits were declarations, a 26 page statement of undisputed facts which consisted of 96 facts (each undisputed fact was supported by citation to evidence), an 8 page request for judicial notice, and a declaration regarding efforts to meet and confer prior to the filing of summary judgment.  See Doc. Nos. 24-27.  It is true that significant work had been done on the summary judgment motion prior to September 29, 2012.  See Doc. No. 38 at Exs. A, P.  Considering the time spent on particular days, the records seem to

---

[5] This appears to be in response to Ramirez's November 29, 2012 fax in which Ramirez said that she would dismiss her case.  The 3 hours were expended on November 29, November 30, and December 3, 2012.  See Doc. No. 38 at Ex. A.

14

1  reflect that Stone would spend substantial amounts of time preparing the motion, and then
2  Matzkind would do reviews. See id. Eventually, Matzkind took full control of the motion after
3  October 18, 2012. See id. Assuming an 8 hour work day, the records indicate Stone spent just
4  over 3 weeks in total preparing the motion, and Matzkind spent approximately 1 week in total
5  preparing the motion. See id. Considering the size and nature of the motion, and in the absence
6  of argument from Ramirez on this point, the Court cannot find that the 51 hours spent on the
7  summary judgment motion from September 29, 2012 forward was unreasonable. Therefore, the
8  Court will not reduce these 51 hours.

9       Matzkind and Stone then spent 19.25 hours (5.75 hours by Matzkind and 13. 5 hours by
10 Stone) preparing this fee motion. A party may recover attorneys' fees for the time spent on a fees
11 motion. See Davis v. City of San Francisco, 976 F.2d 1536, 1544 (9th Cir. 1992). This fee
12 motion consisted of 20 pages of briefing and 16 exhibits that totaled 123 pages. See Doc. Nos.
13 36-38. Considering the size and nature of this fee motion, and in the absence of argument from
14 Ramirez on this point, the Court cannot find that 19.25 hours is an unreasonable amount of time.
15 The Court will not reduce the 19.25 hours.

16      Stone spent .5 hours reviewing the summary judgment order, while Matzkind spent 1 hour
17 to review the summary judgment order, the actual judgment, and research on "closed cases." The
18 summary judgment order was 9 pages. See Doc. No. 33. In the absence of argument from
19 Ramirez on this point, the Court cannot find that 1.5 hours spent in review and research of the
20 summary judgment order and the judgment was unreasonable.

21      Finally, Matzkind spent 2.75 hours researching dismissals and 1.25 hours composing a
22 letter to Ramirez's counsel. The County has not provided the letter (which was dated December
23 4, 2012) to Ramirez's counsel. However, Ramirez has not objected to the 1.25 hours, and the
24 description is sufficient to meet the County's burden. See Fischer, 214 F.3d at 1121. The Court
25 will not reduce the 1.25 hours. However, dismissals are generally governed by Federal Rule of
26 Civil Procedure 41. The application of Rule 41 to this case would not appear to be complex.
27 Nearly three hours to research dismissals, without further explanation, is excessive. The Court
28 will reduce the 2.75 hours to 1.5 hrs.

c. Lodestar Amount

Matzkind spent 22.5 reasonable billable hours on this matter. At a rate of $325 per hour, the loadstar figure for Matzkind is $7,312.50.

Stone spent 38 reasonable billable hours on this matter. At a rate of $250 per hour, the lodestar figure for Stone is $9,500.00.

d. Modification under *Kerr* Factors

The County states that, "in the instant case, no adjustment to the presumptively reasonable lodestar amount need be made." Doc. No. 47 at 16:14-16. The lodestar figure enjoys a strong presumption of validity, and it is only in extraordinary cases that it is adjusted. Antoninetti, 643 F.3d at 1176; Fischer, 214 F.3d at 1119 n.4. Especially given the County's express statement, the Court concludes that this is not an extraordinary case and an adjustment under the *Kerr* factors is unwarranted.[6]

e. Total Attorneys' Fees Awarded

The County is entitled to an award of $7,312.50 for hours expended by Matzkind, and $9,500 for the hours expended by Stone. In total, the County will be awarded $16,812.50.

3. Costs

The *Christiansburg* standard applies to an award of litigation costs under 42 U.S.C. § 12205. Brown, 246 F.3d at 1190. Here, the County requests that it be awarded its expert fees. Specifically, the County requests $37,133.20 for work performed by Kabootian, Lynch, and Volk. See Doc. No. 37 at 15:7-14; Doc. No. 38 at Ex. N.

As discussed above, the Court finds that this case clearly became frivolous, unreasonable, and without foundation as of September 29, 2012. It is from that date that the Court will make an

---

[6] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Resurrection Bay Conservation Alliance v. City of Seward, 640 F.3d 1087, 1095 n.5 (9th Cir. 2011). Courts do not consider *Kerr* factors that are subsumed in the initial lodestar calculation. See Fischer, 214 F.3d at 1119; Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Also, *Kerr* factor six is no longer valid, and the validity of *Kerr* factor 10 is doubtful. Resurrection Bay, 640 F.3d at 1095 n.5.

award under 42 U.S.C. § 12205.  See Edgerly, 599 F.3d at 962; Smith, 2013 U.S. Dist. LEXIS 83353 at *2-*6.  The expert fees were all incurred prior to September 29, 2012.  See Doc. No. 38 at Ex. N.  Accordingly, the Court will not award the County its expert witness fees.

B.Sanctions Under 28 U.S.C. § 1927 or The Court's Inherent Authority

A court has the inherent power to sanction parties or their lawyers if they act in "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," as well as for "willful[] abuse [of the] judicial processes." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Gomez v. Vernon, 255 F.3d 1118, 1135 (9th Cir. 2001).  In order to sanction a litigant under the court's inherent powers, the court must make a specific finding of "bad faith or conduct tantamount to bad faith," recklessness alone is insufficient.  Gomez, 255 F.3d at 1134.  "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar the assessment of attorney's fees."  Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001).  However, "inherent powers must be exercised with restraint and discretion."  Chambers v. Nasco, Inc., 501 U.S. 32, 44 (1991).

"Sanctions are available under § 1927 . . . only if the attorney 'unreasonably and vexatiously' multiplies proceedings."  Gomez, 255 F.3d at 1135.  "The key term in the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." Thomas v. Girardi, 611 F.3d 1027, 1061 (9th Cir. 2010).  Thus, an award of sanctions under 28 U.S.C. § 1927 requires a finding of recklessness or bad faith.  B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002).  While Ninth Circuit cases "have been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose sanction for attorneys' fees under § 1927, or whether there must be a finding of subjective bad faith, what is clear from our case law is that a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, and a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also

17

sufficient to impose sanctions under § 1927." Thomas, 611 F.3d at 1061 (citations omitted). Because sanctions under § 1927 are authorized only for the unreasonable multiplication of proceedings, "it applies only to unnecessary filings and tactics once a lawsuit has begun. . . [and] cannot be applied to an initial pleading." In re Keegan Mgmt. Co. Sec. Lit., 78 F.3d 431, 435 (9th Cir. 1996). "Section 1927 is permissive, not mandatory. The court is not obliged to grant sanctions once it has found unreasonable and vexatious conduct. It may do so in its discretion." Corley v. Rosewood Care Ctr., 388 F.3d 990, 1014 (7th Cir. 2004). Sanctions imposed under § 1927 cannot be "more than the excess costs, expenses, and fees incurred by the opposing party," and district courts have the discretion to reduce an award to less then the costs, expenses, and fees incurred. Haynes v. City & Cnty of San Francisco, 688 F.3d 984, 987-88 (9th Cir. 2012).

With respect to the Court's inherent authority, the Court has determined that this case was not necessarily frivolous when filed. Further, the County has not shown that Ramirez or her counsel were motivated by vindictiveness, obduracy, or *mala fides*.[7] Courts are to use restraint and discretion when considering sanctions under their inherent powers. Given this restraint, the Court is not satisfied that there has been a sufficient showing of bad faith on the part of Ramirez's counsel. Therefore, the Court will not issue sanctions under its inherent authority in this case.

With respect to § 1927, the Court has determined that the point at which it became clear that this case lost its reasonableness and foundation was after September 28, 2012. From that point forward, the proceedings were arguably unreasonably multiplied. Even assuming vexatious conduct by Ramirez's counsel, the Court has already awarded attorneys' fees from that point in time. Attorneys' fees under § 1927 for conduct fees incurred prior to September 28, 2012, are not recoverable. Haynes, 688 F.3d at 987-88. Without further argument from the County, the court will not award sanctions under §1927.

## CONCLUSION

The County seeks nearly $130,000 in attorneys' fees and expert witness fees. However,

---

[7] It appears to be true that Ramirez's counsel did not timely respond to discovery or timely communicate with the County's counsel. However, Ramirez counsel has already been sanctioned for discovery conduct. See Doc. No. 32.

the Court cannot say that this case was frivolous when initially filed, and thus, will not award the full amount requested. Nevertheless, the evidence shows that this case became frivolous, unreasonable, and/or without foundation after September 28, 2012, and that attorneys' fees from that point forward is appropriate. The lodestar figure for the attorneys' fees as of September 29 is $16,812.50. This amount will be awarded to the County under 42 U.S.C. § 12205. Expert witness costs will not be awarded because those fees were incurred prior to September 28, 2012. Further, the Court will not award sanctions under either its inherent authority or § 1927. There has been an insufficient showing of bad faith, and the County is already being compensated for attorneys' fees incurred after September 28, 2012. Although the fees awarded are significantly lower than requested, courts must use caution when awarding fees against a civil rights plaintiff. The fees awarded in this case are justified and consistent the interests expressed in *Christiansburg*.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for attorneys' fees is GRANTED in part, and DENIED in part;
2. Defendant is awarded $16,812.50 under 42 U.S.C. § 12205;
3. Defendant's request for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority is DENIED; and
4. This case remains CLOSED.

IT IS SO ORDERED.

Dated:   September 5, 2013

SENIOR DISTRICT JUDGE